UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES, BASIC CRAFTS WORKERS' COMPENSATION BENEFITS TRUST FUND,<br><br>   Plaintiff,<br><br>  v.<br><br>STEVEN SIEMERS,<br><br>   Defendant.<br>_____/ | No. C-10-0731 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 3)** |

  Plaintiff is the Board of Trustees ("Board") for the Basic Crafts Workers' Compensation Trust Fund ("Fund"). It has filed suit against Defendant Steven Siemers, alleging, *inter alia*, that he violated ERISA because, while employed full time by the Fund, he used the Fund's facilities to run his own private mediation business during working time. Currently pending before the Court is Mr. Siemers's motion to dismiss in which he argues that the state law claims pled in the complaint are preempted by ERISA.

  Having considered the parties' briefs and accompanying submissions, the Court does not agree that there is ERISA preemption because the Board has failed to allege an ERISA claim in the first instance. The Court, however, **GRANTS** the motion to dismiss because (1) the Board has failed to state a claim for relief under ERISA and (2) the Court declines supplemental jurisdiction over the state law claims.

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND

In its complaint, the Board alleges as follows. The Fund is an employee benefit plan and multiemployer plan within the meaning of ERISA. *See* Compl. ¶ 5. The Fund hired Mr. Siemers as a full-time employee "to establish and implement an alternative workers' compensation program," which is permitted under California law. Compl. ¶¶ 7, 11.

At the time that he was hired, Mr. Siemers asked one of the trustees on the Board if he could conduct a separate private arbitration and mediation practice. *See id.* ¶ 14. Mr. Siemers did not disclose the nature and scope of the proposed private practice. *See id.* Furthermore, the trustee "understood that all private outside work would be done on [Mr. Siemers's] vacation time, after normal business hours, or on weekends." *Id.* Finally, Mr. Siemers did not ask for, and the trustee did not offer, the use of Fund facilities for Mr. Siemers's private activities. *See id.*

Subsequently, Mr. Siemers "converted the Fund's office into the primary office for his private business and proceeded to conduct private business during Fund business hours in the Fund [o]ffice." *Id.* ¶ 15. In fact, Mr. Siemers even "used the Fund [o]ffice address as his private business address in marketing materials," "held out the Trust Fund phone number as his private business number," and "met with private business clients in the Fund [o]ffice." *Id.* Moreover, Mr. Siemers "used the Fund's computer and software for his own private business." *Id.* All of this was done without the Fund's knowledge. *See* Compl. ¶ 30 (alleging that Mr. Siemers concealed his conduct).

Based on the above allegations, the Board has asserted the following causes of action: (1) violation of ERISA; (2) breach of the duty of loyalty in violation of the California Labor Code; (3) fraud by concealment; (4) unjust enrichment; and (5) breach of contract.

## II. DISCUSSION

In his motion to dismiss, Mr. Siemers argues that the state law claims alleged in the complaint should be dismissed because they are preempted by ERISA. "There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in 29 U.S.C. § 1132(a), notwithstanding the lack of express preemption." *Paulsen v. CNF Inc.*, 559 F.3d 1061,

2

1081 (9th Cir. 2010). In the instant case, Mr. Siemers is arguing only express preemption under 29 U.S.C. § 1144(a).

While generally there is a presumption against preemption, *see Golden Gate Rest. Ass'n v. City & County of San Francisco*, 546 F.3d 639, 647 (9th Cir. 2008) (stating that "state and local laws enjoy a presumption against preemption when they 'clearly operate[ ] in a field that has been traditionally occupied by the States'"), the Ninth Circuit has observed that the preemption clause embodied in § 1144(a) "is one of the broadest ever enacted by Congress." *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993). Section 1144(a) provides that "the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "[A] law relates to an employee benefit plan if it has either a 'connection with' or 'reference to' such a plan." *Paulsen*, 559 F.3d at 1082. "To determine whether a law has a forbidden reference to ERISA plans, [a court] ask[s] whether (1) the law acts immediately and exclusively upon ERISA plans, or (2) the existence of ERISA plans is essential to the law's operation." *Id.* (internal quotation marks omitted). There is, however, no "succinct definition of, or analytical framework for, evaluating the phrase 'connection with.'" *Id.*

> Instead, "to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." We have recognized that "'[t]he basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.'" We have also noted that "the Court has established a presumption that Congress did not intend ERISA to preempt areas of 'traditional state regulation' that are 'quite remote from the areas with which ERISA is expressly concerned -- reporting, disclosure, fiduciary responsibility, and the like.'"
>
> We have employed a "relationship test" in analyzing "connection with" preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee.

*Id.*

///

///

3

In the instant case, there is no contention that the "reference to" prong is applicable. Therefore, the Court focuses on the "connection with" prong. As indicated above, with respect to this prong,

> [t]he key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships*: for instance, the relationship between the plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved).

*Castonguay*, 984 F.2d at 1521 (emphasis added). There is no ERISA preemption where "a plan operates just like any other commercial entity -- for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space." *Id.* at 1522. Therefore, to determine whether there is preemption of a state law claim, a court must ask whether the claim "reaches a relationship that is already regulated by ERISA. . . . Any regulation of the relationship is basis enough for preemption." *Id.*

In the instant case, the relationship at issue is between the Fund and Mr. Siemers, one of its employees. While this is not a relationship that is within the typical core of ERISA -- in fact, is one which typically operates within the realm of commercial entities outside the reach of ERISA -- a relationship between a plan and its employee is subject to regulation by ERISA under limited circumstances. More specifically, under ERISA, certain transactions are prohibited between a plan and a party in interest, such as an employee of the plan.[1] *See* 29 U.S.C. § 1106(a). Here, the Board has alleged that Mr. Siemers is a party in interest and that his actions constituted a violation of § 1106(a). *See* Compl. ¶¶ 1, 19-20.

Because the test of preemption turns on whether the state law reaches a relationship that is already regulated by ERISA, *see Castonguay*, 984 F.2d at 1522, the question of whether ERISA regulates the transaction is dispositive to the preemption analysis. The subject matter is either regulated by ERISA (in which case preemption applies) or it is not (in which case preemption does

---

[1] "Party in interest" is defined in 29 U.S.C. § 1002(14) and includes, *e.g.*, a person providing services to the plan and an employee of the plan. *See* 29 U.S.C. § 1102(14)(B), (H).

not apply). It is logically impossible to have it both ways. Where the same conduct is at issue, either ERISA or state law applies but not both.

The Board nonetheless argues that, so long as a state law claim does not conflict with ERISA, it will not be preempted. In support of this contention, the Board relies on *Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811 (9th Cir. 2001), and *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212 (9th Cir. 2000). The Court is not persuaded. In *Abraham*, the Ninth Circuit did take note, in holding that there was no preemption, that there was a state law relationship between the plaintiffs and defendant independent of the ERISA relationship. *See Abraham*, 265 F.3d at 821-22. But underlying the court's holding that there was no preemption was the fact that the plaintiffs' state law claims did not implicate the prohibited transaction provision. *See id.* at 821. The court noted: "[T]he employees were suing as note holders for state law fraud, breach of fiduciary duty, and negligence arising from a transaction that was *expressly exempted from the prohibited transaction provision*; [therefore,] their status as 'parties in interest' is irrelevant." *Id.* (emphasis added). Thus, *Abraham* does not gainsay *Castonguay*'s implication that a matter cannot be both regulated by ERISA and at the same time actionable under state law.

As for the Board's reliance on *Rutledge* to argue that only conflicts are preempted, that contention is also unavailing. While, in *Rutledge*, the Ninth Circuit made reference to "inconsistent substantive and procedural rules," *Rutledge*, 201 F.3d at 1222, that phrase, taken in context, is simply part of the Ninth Circuit's discussion of the general policy concerns underlying ERISA preemption. Those concerns are broader than preventing actual conflict.

> In [a prior case], we held that state-law claims against a non-fiduciary for prohibited transactions "relate to the administration of a plan covered by ERISA" and are preempted. The soundness of this holding can be seen when considered in the light of our purposive and relationship-focused approach to preemption. In its enumeration of prohibited transactions, ERISA precisely defines the relationship between plans and parties in interest. This reveals an "ERISA-governed relationship," with regard to the rates charged by lawyers to plans. By introducing the possibility of inconsistent substantive and procedural rules with regard to excessive fees, state law claims can be deemed to have a "marked effect on plan administration"; by duplication, a state law cause of action concerning excessive fees contravenes the principle that "the remedies Congress created were intended to be exclusive." The prohibited transactions provision serves ERISA's purposes by protecting a plan's participants

5

> and beneficiaries from a depletion of plan assets through shady, inside deals and by providing a consistent rule of reasonableness governing fees for services across jurisdictions. The state law claim interferes with this carefully spelled-out relationship by providing an alternative route for beneficiaries and participants to rectify excessive fees.

*Id.* at 1221-22. Thus, even in the absence of actual conflict, because Congress intended ERISA remedies to be exclusive, state remedies that interfere with the remedial scheme established by Congress are preempted.

The Court thus concludes that, if Mr. Siemers's actions constituted a violation of § 1106(a), preemption would apply because the relationship would be one regulated by ERISA. As the court explained in *Abraham*, preemption applies where the state law claim is premised on the relationship between the plan and its "servicer provider *in the very respects* governed by ERISA's regulation of prohibited transactions." *Abraham*, 265 F.3d at 821 (emphasis added). *Compare Hausmann v. Union Bank of California, N.A.*, No. SA CV 07-1436 AHS (MLGx), 2009 U.S. Dist. LEXIS 39074, at \*17 (C.D. Cal. May 8, 2009 (holding that the plan's state law claims against its service providers were not preempted because the plan gave "no explanation of how the [service providers'] failure to disclose commissions is a prohibited transaction").

That being said, the Court concludes that, as alleged in the complaint, the Board has not adequately pled a violation of § 1106(a). As explained by Judge Breyer in *Damasco & Associates 401(k) Profit Sharing Plan v. Manufacturers Life Insurance Co.*, No. C 99-2135 CRB, 1999 U.S. Dist. LEXIS 13654 (N.D. Cal. Aug. 20, 1999), the language of § 1106(a) makes clear that there is a § 1106(a) violation actionable against a party in interest only where the prohibited transaction between the plan and party in interest is *caused* by a plan fiduciary and where the plan fiduciary *knows or should know* of the transaction.[2] Judge Breyer concluded that, in the case under his

---

[2] Under § 1106, with certain exceptions,

> [a] fiduciary with respect to the plan shall not *cause* the plan to engage in a transaction, if he *knows or should know* that such transaction constitutes a direct or indirect --
>
> (A) sale or exchange, or leasing, or any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan

6

consideration, the prohibited transaction provision did not come into play because the plaintiff had not alleged causation by a fiduciary or knowledge on the part of a fiduciary. There was no causation because the plaintiff had complained of a kickback scheme conducted by plan service providers in secret. Similarly, there was no knowledge because the plaintiff had specifically alleged that the fiduciaries were not aware of the kickback scheme. *See id.* at *22-23.

In an opinion issued after *Damasco*, the Supreme Court indicated that Judge Breyer's approach was correct. In *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), the Supreme Court commented that, under § 1106(a), a "transferee [*i.e.*, party in interest] must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful" and that "[t]hose circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a [§ 1106(a)] transaction, caused the plan to engage in the transaction." *Id.* at 251 (emphasis added).

Like *Damasco*, the instant case contains allegations that Mr. Siemers was conducting his private business using Fund resources and during work time in secret. *See, e.g.*, Compl. ¶¶ 30, 32 (alleging that Mr. Siemers "conceal[ed] the fact that his private mediation business would be conducted during Fund business hours, using Fund assets and facilities" and that he "intentionally misled [the plan] to believe that he was using the Fund's facilities and assets solely for the purpose of conducting the business of the Fund"). The complaint does not allege that Mr. Siemers was a fiduciary, only that he was a party in interest. Therefore, the prohibited transactions provision has not been met, and there is no viable ERISA claim. Accordingly, while the Court disagrees with Mr.

---

and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets or the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 407 [29 U.S.C. § 1107(a)].

*Id.* § 1106(a)(1) (emphasis added).

Siemers's contention that the Board's ERISA claim preempts its state law claims, it does so only because no ERISA claim is stated.

At the hearing, the Board agreed that, although Mr. Siemers had not formally moved for dismissal of the ERISA claim, it would not oppose, in the interest of moving the litigation forward, the Court ruling on the ERISA claim given its analysis of the preemption issue. The Court therefore dismisses the ERISA claim for failure to state a claim for relief. In addition, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore dismisses those claims as well. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplement jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction").

The Court, however, shall give the Board leave to file an amended complaint, if it so wishes. At the hearing, the Board indicated that it may amend its complaint to allege that Mr. Siemers is a fiduciary subject, *e.g.*, to § 1106(b). The Court notes that, if the Board chooses to proceed in that fashion, then it must include allegations that make a facially plausible claim that Mr. Siemers is a fiduciary. *See generally Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

### III. CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss. The Board may, if it wishes, file and serve an amended complaint by May 28, 2010. If the Board does not file an amended complaint, then the Clerk of the Court shall enter judgment in accordance with this order and close the file in this case.

This order disposes of Docket No. 3.

IT IS SO ORDERED.

Dated: May 6, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge